UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR05-0093S |
| | ) | |
| ROGELIO RODRIGUEZ-LUNA | ) | |

# DEFENDANT'S SENTENCING MEMORANDUM

## I. Introduction

Mr. Rodriguez-Luna submits this memorandum in support of his request for a 6 month sentence of incarceration for violating the terms of his supervised release. The Court has received a Report and Recommendation from Magistrate Judge Almond recommending a sentence of 13 months in prison, which falls within the 12 to 18 month range suggested by the advisory sentencing guidelines. This Court, however, must determine the appropriate sentence by assessing Mr. Rodriguez's individual circumstance under 18 U.S.C. § 3553(a).[1] The advisory guidelines and the Magistrate Judge's recommendations are part of the procedure, but certainly not the end of the process. When looking at all of the available information the Court should conclude that both the guidelines and the recommendation call for a sentence in excess of necessity.

## II. Procedural Background

This Court sentenced Mr. Rodriguez-Luna to 10 months in prison for illegally reentering the United States on March 3, 2006. The government subsequently deported Mr. Rodriguez on June 6, 2006. Allegedly, local police in Pharr, Texas, arrested Mr. Rodriguez on September 10, 2006, and later released him. Again allegedly, local police arrested Mr. Rodriguez on April 29, 2007, in Pharr and then released him. Immigration agents then took Mr. Rodriguez into custody, apparently at

---

[1] Unlike discretionary sentencing power since *Booker v. United States*, 543 U.S. 220 (2005), District courts have had full discretion in sentencing supervised release violations since 1992. *United States v. O'Neill*, 11 F.3d 292, 301 n. 11 (1st Cir. 1992) (holding guideline policy statements governing supervised release violations do not carry the same mandatory force as substantive sentencing guidelines).

work, on June 6, 2007. The government held Mr. Rodriguez in custody in Texas until his transfer here to Rhode Island on July 11, 2007. On July 31, 2007, Mr. Rodriguez appeared before Magistrate Judge Almond and admitted to violating the conditions of his supervised release by returning to the United States during his release period. Sentencing for this violation is scheduled for September 13, 2007.

III. Sentencing Considerations

A. General

The Court must conform its sentencing on supervised release violations, like substantive sentencing, to the requirements of 18 U.S.C. § 3553(a). The statute directs the court to impose a sentence sufficient to address the purposes of sentencing without being longer than necessary. 18 U.S.C. § 3553(a). The purposes of sentencing include the promotion of respect for the law, deterrence, protection of the public, and the defendant's rehabilitative needs. *Id*. The court must consider myriad general and specific items of information when determining the appropriate sentence to achieve those ends, including the defendant's individual background and offense conduct, the advisory guideline recommendation, and the types of sentences available. The Court must consider the Report and Recommendation and the advisory guidelines, but is not obligated to follow those recommendations. Ultimately the sentencing judge is in the best position to determine the appropriate sentence utilizing all of the facts and considerations presented.

B. Personal Background

Mr. Rodriguez's background remains the same as when he was originally sentenced. He and most of his siblings have spent their whole adult lives in the McAllen-Brownsville area of Texas and the corresponding Mexican border cities of Reynosa and Matamoros. In fact, Mr. Rodriguez's repatriation consisted of US immigration officials releasing him on the US side of the bridge and telling him to walk back to Mexico. Mr. Rodriguez completed that walk and promptly started working.

The unfortunate reality is that Mr. Rodriguez was only able to earn approximately $50 per week in Mexico. The court may recall that Mr. Rodriguez has two daughters and two step daughters with his ex-wife who he was trying to help support. The financial lure of Texas is simply great. Mr.

Rodriguez was able to secure a landscaping job earning $350 per week soon after he came back into the US. Mr. Rodriguez understands that his financial hardship cannot legally justify his return, but the economics of his situation dictated his actions.

C. Purposes of Sentencing

As stated, the Court must fashion a sentence according to § 3553(a) which promotes the purposes of sentencing. Magistrate Judge Almond considered these facts and determined that a sentence of 13 months was appropriate. His determination relied heavily on the base premise that imposing more jail time than the original sentence would properly promote deterrence. There is no support, however, for that conclusion. In fact, given the unique facts present here, the length of this violation sentence has little relation to deterring Mr. Rodriguez from returning.

Judge Almond also sought to justify this recommendation as protecting the public from Mr. Rodriguez. Clearly a valid reason under the statute but Mr. Rodriguez is not a danger to the community. The Pharr, TX, police department arrested him twice, identified him as an illegal alien twice, reported his arrest on the NCIC twice, and both times released him. When the government finally decided to go looking for Mr. Rodriguez, based on this Court's violation warrant, they found him right where he said he would be - at work. Mr. Rodriguez provided the Pharr police with his actual work address which shows his character as an honest hard worker. Judge Almond also referenced Mr. Rodriguez's pending state cases in Texas as a reason to protect the public. That reference does not properly promote the purposes of sentencing because Mr. Rodriguez is presumed innocent in those matters. The Court cannot use those allegations here to support a violation sentence.

Further, Magistrate Judge Almond's recommendation fails to address Mr. Rodriguez's rehabilitative needs. The BOP does not treat deportable aliens the same as citizen prisoners, and does not offer them adequate rehabilitation programs or participation in early release or work release programs. The lack of rehabilitative support should call for a shorter sentence, not longer.

Lastly, the recommended sentence does not promote respect for the law or the concept of justice. The advisory guideline range does not take into account any individual information, and is

not related directly to the original offense conduct or the conduct triggering the violation.[2] Arriving at a just punishment under this design is less than artful. Also, the economics of this prosecution do little to promote respect for the law when weighing the cost to the American taxpayer to prosecute and warehouse Mr. Rodriguez until his deportation against his unlawful presence in the US. It also presents a situation bordering irony, recognizing that Mr. Rodriguez came here in order to make money to pay his own way and support his family. True justice would result in the stabilization of the Texas-Mexico border economy and opportunity to make a living wage on both sides. This Court cannot solve that problem, but it can avoid exacerbating Mr. Rodriguez's particular circumstance by declining to impose the suggested sentence.

VI. Conclusion

For all of these reasons, Mr. Rodriguez-Luna asks the Court to consider and adopt his proposed sentence.

Respectfully submitted
Rogelio Rodriguez-Luna
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was hand-delivered to Dennis Jenkins, United States Probation Officer, and Stephen Dambruch, Assistant United States Attorney, on September 6, 2007.

/s/ Kevin J. Fitzgerald

[2] The guideline looks at the "level" of the prior offense (Class A - E felonies) and the "level" of the violating conduct (technical violation, misdemeanor, or felony). See U.S.S.G. § 7B.